UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANNIE BOOKER,                           :
                                        :   NO. 1:11-CV-660
        Plaintiff,                      :
                                        :   **OPINION & ORDER**
                                        :
    v.                                  :
                                        :
                                        :
GARDEN MANOR EXTENDED CARE              :
CENTER                                  :
                                        :
        Defendant.

        This matter is before the Court on Defendant's Motion

for Summary Judgment (doc. 23), Plaintiff's Response in

Opposition (doc. 26), and Defendant's Reply in Support (doc.

31).  The Court held a hearing on the motion on October 9, 2012.

For the following reasons, the Court GRANTS Defendant's motion

(doc. 23).

**I.  BACKGROUND**

        Plaintiff was an attendant at Defendant's assisted

living unit from 2006 until her employment was terminated on

November 8, 2010, after an investigation resulted in Defendant

concluding that Plaintiff had been stealing food from its

facility.  At the time of her termination, Plaintiff worked the

night shift approximately two nights per week.  In early

November 2010, Defendant's Director of Human Resources, Annette Dynes, heard from an employee that another night-shift attendant, Elizabeth Edwards, had slept during her shift in the bedroom of a recently-deceased resident. Ms. Dynes decided to conduct an investigation and started by interviewing other night-shift employees about the alleged incident. When one of those employees stated that Ms. Edwards had slept for two hours in that deceased resident's room and that Plaintiff "would lie around and rest for hours at a time during her shift," Ms. Dynes decided to broaden the scope of her investigation because she was concerned about the possibility of multiple employees engaging in misconduct during the night shifts.

As part of her five-day investigation, Ms. Dynes interviewed eight night-shift employees. Two of those employees reported that Plaintiff and another employee, one Lavel Mathers, repeatedly stole significant amounts of food from Defendant's kitchen. Ms. Dynes shared those accusations with Defendant's Administrator, Shane Craycraft, who, based on the accusations, decided to suspend Plaintiff's employment pending a theft investigation. During the course of the suspension meeting that occurred on November 5, 2010, at which it was conveyed to Plaintiff the reasons for her suspension, Plaintiff did not deny ever stealing food, but she was never directly asked if she had

done so.  Ms. Dynes then contacted the local police department, who assisted with the theft investigation.  According to the results of the investigation, Plaintiff had been seen on several occasions over the previous twelve months stealing large quantities of food from Defendant's kitchen and loading them into her co-worker's van.  Based on the investigation and Plaintiff's demeanor during the suspension meeting, Mr. Craycraft decided to terminate Plaintiff's employment, which he did at a meeting with Plaintiff on November 8, 2010.

In total, four employees were terminated as a result of Ms. Dynes' night-shift investigation[1]: Plaintiff, who is African American, was terminated based on the allegations of stealing; Ms. Edwards, who is Caucasian, was terminated for sleeping on duty; Charise Hall, who is African American, was terminated for negligent or willful inattention to work based on reports that, among other things, she refused to help a resident in breathing distress until she finished taking a test online; and Yvonne Myers, who is Caucasian, was terminated for failing to adequately supervise the night-shift employees.

Plaintiff then filed the instant suit, alleging that she was terminated on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1987.

_____

[1] A fifth, Ms. Mathers, would have been terminated but she resigned before her termination meeting.

## II. STANDARD

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Fatton v. Bearden, 8 F.3d. 343, 346 (6th Cir. 1993), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1982); Street v. J.C.D. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879

5

F.2d 1304, 1310 (6th Cir. 1989).  Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994).  Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits.  Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted).  In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment.  See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990).  The Court must view all submitted evidence, facts, and reasonable inferences in

a light most favorable to the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962).  Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion.  See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute.  See Matsushita, 475 U.S. at 587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the court to demonstrate that summary judgment is appropriate.  See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

## III.  Discussion

Under the familiar McDonnell Douglas burden-shifting framework for single-motive discrimination claims, a Title VII plaintiff utilizing circumstantial evidence, as Plaintiff does here, must first make out a prima facie case of discrimination by showing 1) that she was a member of a protected class; 2) that she was discharged; 3) that she was qualified for the position held; and 4) either that she was replaced by someone outside of the protected class or that similarly situated non-

protected employees were treated more favorably. <u>Geiger v. Tower Auto.</u>, 579 F.3d 614, 622 (6th Cir. 2009); <u>Minadeo v. ICI Paints</u>, 398 F.3d 751, 764 (6th Cir. 2005)(internal citations omitted). After the plaintiff has made out a <u>prima facie</u> case of discrimination, the employer must present a legitimate, nondiscriminatory reason for the termination. <u>Chen v. Dow Chem. Co.</u>, 580 f.3d 394, 400 (6th Cir. 2009). The burden of production then shifts back to the plaintiff to show that the employer's proffered nondiscriminatory reason was pretext. <u>Id.</u>

Here, there is no dispute that Plaintiff is a member of a protected class and that she was discharged. Defendant, however, argues that Plaintiff has failed to meet the fourth prong of the <u>prima facie</u> case because the facts show that Plaintiff was neither replaced by someone outside the class nor was she treated differently from a similarly situated non-protected employee (doc. 23).

Defendant is correct. Fatal to Plaintiff's case is the undisputed fact that four employees were terminated as a result of Ms. Dynes' investigation into allegations of wrong-doing on the night shift. Two of them are African American, and two are Caucasian. This fact completely undermines Plaintiff's <u>prima facie</u> case because she cannot show that she was treated differently or less favorably than a similarly-situated non-

protected employee.

Plaintiff did not address this fatal fact either in her response to Defendant's motion or at the hearing. Instead, Plaintiff contends that she has set forth a comparator in Pennie Montgomery. Pennie Montgomery, also an attendant at Defendant's long-term care facility, is Caucasian. Plaintiff contends that Ms. Montgomery was investigated for theft and treated more favorably than Plaintiff was during her investigation, thus satisfying the fourth prong of the prima facie case.

Plaintiff points to two incidents that, she argues, put her and Ms. Montgomery in the same category as being employees accused of theft: first, Plaintiff claims that Ms. Montgomery was accused of theft by a housekeeper named Debbie Begley, and, second, she claims Ms. Montgomery was accused of theft by Lavel Mathers. As to the first claim, Plaintiff points to an affidavit of Elizabeth Edwards, another former employee of Defendant, in which she states that some months before Plaintiff was fired, Ms. Edwards brought a box of food to work to give to Ms. Montgomery. Ms. Edwards states that Ms. Montgomery "had taken food from the kitchen and added to the box of food that [she] brought in." Ms. Edwards further states that she and Ms. Montgomery were summoned to Ms. Dynes' office the day after she brought the box of food to work, and Ms. Dynes told her that a

9

housekeeper had seen Ms. Montgomery taking a box of food. Ms. Edwards claims that she lied at that time when she did not tell Ms. Dynes that Ms. Montgomery stole food and added it to the box Ms. Edwards had brought in for Ms. Montgomery. She claims she did not tell Ms. Dynes about the stolen food because she was scared of Ms. Montgomery. Ms. Dynes took no disciplinary action against Ms. Montgomery, and there are no contemporaneously written notes from that investigation that are part of the record.

First, this incident does not address or erase the fact that two non-protected employees were terminated for wrong-doing uncovered during the same investigation that uncovered Plaintiff's wrong-doing. Neither does this incident support Plaintiff's argument that she was treated differently than Ms. Montgomery after they were both accused of theft. As an initial matter, Defendant argues that the Court should not even consider the assertion made by Ms. Edwards that a housekeeper accused Ms. Montgomery of stealing food because it is double hearsay. Defendant is correct. Plaintiff seeks to use that statement for the truth of the matter asserted, that Ms. Montgomery was accused by an employee of theft, and it was a statement allegedly made by the housekeeper to Ms. Dynes and then repeated in Ms. Edwards' affidavit. As such, it is double hearsay and

10

thus inadmissible.  See Alexander v. Caresource, 576 F.3d 551, 558 (6th Cir. 2009); Fed. R. Civ. P. 56.

As Defendant notes, the only admissible evidence regarding this incident where Plaintiff contends Ms. Montgomery was accused of stealing by a fellow employee are the statements by the housekeeper herself and Ms. Dynes—both of whom deny that Ms. Montgomery was ever accused of theft.  At the hearing and in her response to Defendant's motion, Plaintiff pointed to notes of an interview Ms. Dynes conducted of Ms. Montgomery on April 23, 2012, in which Ms. Dynes noted that she asked Ms. Montgomery if she had ever stolen food from Defendant.  Plaintiff claims that this is an admission that Ms. Montgomery had been accused of theft, arguing that there would be no other reason to ask that question.  However, as Defendant notes, Ms. Dynes conducted that investigation because of the statements set forth in Ms. Edwards' affidavit, where Ms. Edwards accused Ms. Montgomery of stealing.  Ms. Edwards made that accusation after this litigation commenced and months after her own employment was terminated.  She even admits in the statement that while she was still an employee she did not accuse Ms. Montgomery of stealing because she was scared of her.  Therefore, Ms. Dynes' notes from the investigation that she conducted resulting from the accusations set forth in Ms. Edwards' affidavit do not in any

11

way support Plaintiff's assertion that Ms. Montgomery was accused of theft by an employee and treated more favorably than Plaintiff.

With respect to the second incident Plaintiff relies on, that Ms. Montgomery was accused of theft by Ms. Mathers, the result is the same. The record evidence shows that Ms. Mathers never accused Ms. Montgomery of theft while Ms. Mathers was employed by Defendant, even while she herself was under investigation for theft. Ms. Mathers' accusation came only after she no longer worked for Defendant. Despite the fact that the accusation came from a disgruntled former employee, Ms. Dynes nevertheless conducted an investigation and enlisted the help of the local police. Neither Ms. Dynes nor the police found evidence to substantiate Ms. Mathers' accusation against Ms. Montgomery. And, in any event, as noted, that accusation was made at a time when Ms. Mathers was no longer an employee and months after Plaintiff was fired. As such, Ms. Mathers' accusation is not evidence showing that both Plaintiff and Ms. Montgomery were accused of theft by employees.

Simply put, according to the undisputed facts presented, Ms. Montgomery, unlike Plaintiff, was not accused by any of Defendant's employees of theft. That fact alone means that Ms. Montgomery cannot be a comparator for purposes of

Plaintiff's prima facie case, even if Plaintiff could somehow overcome the fact that two non-protected employees were terminated as a result of the same investigation that resulted in Plaintiff's termination.

In sum, Plaintiff has not presented, as she is required to do, "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" and has failed to satisfy the elements of the prima facie case for race discrimination. See Moore, 8 F.3d at 339-340. The Court's role in evaluating a motion for summary judgment on a Title VII claim is to "'determine if a plaintiff has put forth sufficient evidence for a reasonable jury to find her to have met the prima facie requirements.'" Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661 (6th Cir.2000). No reasonable jury could, on these facts, find the prima facie requirements met.

Even if the Court were to find that Plaintiff had satisfied the prima facie requirements, Plaintiff would nonetheless not be successful in her attempt to overcome summary judgment because Plaintiff's alleged thievery was a legitimate non-discriminatory reason for her termination, and Plaintiff has failed to adduce evidence from which a reasonable jury could find that that reason was merely pretext for race

discrimination.

A plaintiff can show pretext in three ways. <u>See</u> <u>Manzer v. Diamond Shamrock Chemicals Co.</u>, 29 F.3d 1078, 1083-84 (6th Cir. 1994). First, the plaintiff can show that the proffered reasons had no basis in fact. <u>Manzer</u>, 29 F.3d at 1083-84. This first type of showing consists of evidence that the proffered basis for the plaintiff's adverse treatment never happened, <u>i.e.</u>, that they were false. <u>Id.</u> Second, the plaintiff can show that the reasons given by the employer were insufficient to motivate discharge. <u>Id.</u> This second showing ordinarily consists of evidence that other similarly-situated individuals were more favorably treated. <u>Id.</u> Third, the plaintiff can show that the defendant's proffered reason did not actually motivate the adverse action. <u>Id.</u> In order to make this third type of showing, the plaintiff must introduce additional evidence of discrimination. <u>Id.</u>

The Sixth Circuit has cautioned that courts should "avoid formalism" in the application of the <u>Manzer</u> test, "lest one lose the forest for the trees." <u>Chen v. Dow Chem. Co.</u>, 580 F.3d 394, 400, n. 4 (6th Cir. 2009). Pretext, the court observed, "is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt

14

on the employer's explanation, and, if so, how strong it is."
<u>Id</u>.

Plaintiff does not mention any of the Manzer prongs in her response to Defendant's motion, but the Court finds that she has failed to set forth evidence that would satisfy any of them. First, there is nothing in the record that would show that Plaintiff's co-workers did not actually accuse her of stealing or that Ms. Dynes did not actually conduct an investigation that revealed wrong-doing on the night-shift. Second, as discussed above, Plaintiff has adduced no evidence that other similarly-situated employees were treated more favorably. On the contrary, the other similarly-situated employees were all either fired or resigned, including two in a non-protected class. Third, Plaintiff has adduced no evidence at all that shows that Defendant's proferred reason for her termination—that she stole from Defendant-did not actually motivate Defendant's decision to terminate her employment.

In short, nothing in the record satisfies the standard set forth in <u>Manzer</u> or otherwise casts doubt on Defendant's reasons for terminating Plaintiff's employment. Plaintiff has simply failed to present evidence from which a reasonable jury could conclude that Defendant's proffered reasons for Plaintiff's termination were pretext for impermissible

15

discrimination.

**IV.      Conclusion**

Because Plaintiff has failed to meet her <u>prima</u> <u>facie</u> case, and, even if she had, she has failed to show that Defendant's decision to terminate her employment was pretext for race discrimination, Defendant is entitled to summary judgment. <u>See</u> <u>Barnhart v. Peckrel, Schaeffer & Ebeling Co.</u>, 12 F.3d 1382, 1395 (6th Cir. 1993). The Court therefore GRANTS Defendant's motion (doc. 23), and this matter is closed on the Court's docket.

SO ORDERED.


Dated:  November 1, 2012       /s/ S. Arthur Spiegel
                               S. Arthur Spiegel
                               United States Senior District Judge